LA CORRESPONDENCIA DE PUERTO RICO, INC., Plaintiff and Appellant, v. RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Defendant and Appellee. SAME v. SAME.

Nos. 8221 and 8222. Argued May 7, 1941.—Decided May 23, 1941.

*Enrique Igaravídez,* for appellant. *George A. Malcolm, Attorney General,* and *M. Rodríguez Ramos, Assistant Attorney General,* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

The appellant filed these two actions to recover certain amounts which it alleges to have paid under protest as income tax, and workmen's compensation premiums, respectively. The complaints filed in each suit are substantially similar, exception made of the amounts claimed and of the purpose for which the payment was made, the complaint filed in case No. 8221 referring to income tax and that filed in 8222 to workmen's compensation premiums. It was alleged in said complaints that the plaintiff is a domestic corporation organized on June 25, 1935, and engaged in the publishing of the journal "La Correspondencia de Puerto Rico". That the plaintiff is an entity distinct and independent of the one which was registered under the same name in the office of the Executive Secretary of Puerto Rico until June 14, 1935, date when it was dissolved, and that the latter published the newspaper aforementioned until January 18, 1935, when all its machinery, equipment, etc. was acquired by Mr. Francisco

Zeno in satisfaction of the judgment which he obtained as assignee of the plaintiff in the case of *Banco Comercial de Puerto Rico* v. *La Correspondencia de Puerto Rico, Inc., et al.* That from January 18, 1935, until June 25, 1935, when the plaintiff corporation was organized, Mr. Zeno continued publishing on his own account the already mentioned newspaper until in June 25, he leased the equipment aforementioned to the new corporation, the lease to have a retroactive effect from March 1, 1935. That the latter published for the Department of Finance advertisements of auction sales in distraint proceedings for the collection of taxes, the indebtedness of said Department amounting to the sum of $7,789. That the first corporation, that is, the one which was dissolved on June 14, 1935, owed to The People of Puerto Rico the amount of $674.20 as taxes on its income corresponding for the year 1924 and also owed $690.69 as workmen's compensation premiums corresponding to fiscal years 1927–28, 1929–30, 1930–31 and 1931–32. That notwithstanding the fact that the former corporation was an entity distinct and independent from the plaintiff and that the latter owed nothing to the Treasurer of Puerto Rico, the then Treasurer, Mr. Sancho Bonet, upon delivering to the plaintiff the already mentioned amount as payment for the publication of advertisements on September 19, 1936, retained $690.69 and $674.20 respectively, "against the manifest will of the plaintiff", alleging that said amounts belonged to the dissolved corporation and that he retained them as payment for its debt for income tax, and workmen's compensation premiums respectively. That the defendant Treasurer refused to return said amounts to the plaintiff or to state in the delivered receipts which credited the payment of the debt, the fact that the plaintiff had paid it under protest and that due to this it did not accompany the complaints with said receipts stating the manner of payment. The complaint filed in each case ends with a prayer that the Treasurer of Puerto Rico be

ordered to return the above mentioned amounts with the corresponding interest and the costs.

The demurrers for want of facts sufficient to state a cause of action filed in each case were dismissed and the defendant answered the complaints accepting certain facts and denying others, and affirmatively alleging among other defenses, that the plaintiff voluntarily paid the amounts claimed, that the complaints do not allege facts sufficient to constitute a cause of action and that the court lacked jurisdiction to take cognizance of this actions.

■■ We shall first consider the appeal filed under No. 8221, which refers to the return of the amount paid as income tax.

The People of Puerto Rico cannot be sued without its consent. In consequence, upon giving its consent, it may impose the conditions which it may deem convenient, and availing itself of that right it has provided that in actions for the return of income tax it is not only necessary that the tax be paid under protest, as it is demanded in all cases for the return of taxes paid, but also that the taxpayer, before resorting to the courts, should have exhausted the administrative remedy provided by law, taking an administrative appeal to the Board of Review and Equalization, in order that the latter may review the decision or action taken by the Treasurer. Until this requisite is complied with, the courts will not have jurisdiction to take cognizance of an action for the return of income tax paid since it is so demanded by the law by virtue of which The People of Puerto Rico gave its consent to be sued in this class of actions. See Section 76–B of the Income Tax Law and especially the case of *P. R. Fertilizer Co.* v. *Treasurer et al.*, 54 P.R.R. 644, wherein the opinion delivered by the Supreme Court of the United States in the recent case of *Sancho Bonet, Treasurer,* v. *Yabucoa Sugar Co.*, (1939) 306 U.S. 505, is transcribed *in toto* and which ratifies the numerous decisions of this Court which construe Section 76–B, aforementioned.

It does not appear from the complaint or the evidence in any manner whatsoever that the appellant resorted to the Board of Review and Equalization before paying the income tax. On the contrary, it appears from its brief that the appellant did not comply with this legal requisite. This being so, it is not necessary, for the decision of the appeal filed under No. 8221, that we should determine for the time being whether the payment was made under protest or not. The fact that the requisite aforementioned was not complied with is sufficient to deprive the trial court of jurisdiction to take cognizance of said action.

Let us now consider appeal No. 8222, which makes reference to the return of the amounts paid as premiums for workmen's compensation.

This appeal is regulated by Act No. 8, ''Providing for the payment of taxes under protest; establishing a procedure to authorize the collection and return thereof; etc.'', approved on April 19, 1927 (page 122). That statute, through which The People of Puerto Rico gave its consent to be sued in actions for the return of any kind of taxes other than income tax—which, as we have seen, is regulated by a special act—does not demand in any of its Sections that the taxpayer resort to the Board of Review and Equalization in order to be able to sue in court, but it does demand, the same as the Income Tax Law, that the payment be made under protest. Therefore, we must determine in deciding this appeal—8222—if in reality the plaintiff, before filing this suit, complied with this jurisdictional requisite.

Such a fact is not alleged in the complaint. The sole averment which it contains to that effect is the following phrase which appears in its eighth paragraph, to wit:

'' . . . and the Treasurer of Puerto Rico, on September 19, 1936, against the manifest will of the plaintiff, retained said amount . . .''

That is not the payment under protest demanded by law. The great majority of taxpayers, here as well as in other

places, pay taxes against their will and only because they know that if they should not do so, the government will resort to the compulsory measures provided by law to compel payment. Act No. 8 aforementioned determines what the payment under protest will consist of, when it provides:

"Section 1.—Whenever a taxpayer believes that he should not pay any tax or part thereof, he shall, however, be obliged to pay the same in full upon request of the collector of internal revenue of his district, or of the official in charge of the collection of taxes, and *shall he desire to make any claim, shall ask the said collector or the said official in charge of the collection of taxes, on making payment, to endorse the tax receipt,* specifically stating whether the said protest refers to the whole or to a part of the tax paid under protest, and setting forth the exact amount protested. The said endorsement shall be signed by the taxpayer and by the collector or officer in charge of the collection of taxes."

In the case of *Jiménez* v. *Treasurer,* 47 P.R.R. 454, which had to do with an action for the return of certain excise tax paid under Act No. 19, "To regulate the sale of foreign coffee, whether pure or mixed with Porto Rican coffee, and to provide funds to defray the expenses of such regulation, and for other purposes", approved on April 19, 1928 (page 146), the averment of the complaint relative to the payment under protest, said as follows:

"3. That the plaintiff paid and delivered to the defendant the said sum, involuntarily and by reason of violence and duress, consisting in threats made to the plaintiff by the defendant and his agents to the effect that the plaintiff would be criminally prosecuted and that his business would be destroyed, in accordance with Section 22 of the aforesaid Act, if he failed to make the said payment and to deliver the above sum. And the plaintiff alleges that said payments and delivery of money were made by the plaintiff to the defendant with the sole object of avoiding such criminal prosecution and the destruction of his business, which latter consisted, at the time of paying and delivering said sum, of the purchase and sale of Puerto Rican and foreign coffee."

This Court, in affirming the judgment rendered by the lower court dismissing the complaint on a demurrer for want

of facts sufficient to constitute a cause of action, held that it did not allege that the payment had been made under protest, and the Circuit Court of Appeals for the First Circuit, affirming in turn the judgment of this Court, stated in reference to the payment under protest:

"The complaint sufficiently alleges that the payments in question were not voluntarily made, but were obtained by duress. (Authorities.) It does not allege that any protest was made at the time when the stamps were purchased or used, or that notice was given to the defendant, in connection with the purchase or use of the stamps, of any claim that they were illegally required and that he would be held liable for the sums paid for them . . . The question is whether without these allegations a case for recovery is stated.

"     *          *          *          *          *          *          *

"The insuperable difficulty with the plaintiff's case is that, assuming the action lies as he contends, he is not entitled to recover without alleging and proving that the payments in question were made under protest, or with notice to the official who collected them (the treasurer) that he would be held liable to refund them. This is settled law in the United States except as changed by statute. (Authorities.) It appears also to be the law of Puerto. Rico. *Guerra* v. *Treasurer of Porto Rico*, 8 Porto Rico 280, 308." *Jiménez* v. *Domenech*, 80 F. (2d) 767, 768.

In our opinion, the insufficiency of the averment is manifest.

Let us now see what appears from the evidence.

The evidence in regard to the payment under protest is at the most, contradictory. The star witness for the plaintiff, Mr. Zeno, who made the payment, testified among other things:

"Then the Treasurer . . . called me there and told me: 'Zeno, I have this money here, but I want to collect. We have to collect the taxes owed by the old corporation.' Then the witness answered: 'Well, see, Treasurer, these checks which you have there belong most of them to the new corporation. You may discount those belonging to the old corporation but I want to argue with you in regard to the checks belonging to the new corporation.' We are willing, or at least, I personally, and in order to prevent misunderstandings with the

Finance Department, I am willing to compromise and I am going to tell the court here (this was literally testified by the witness) that I suggested to the Treasurer and it is my belief that he accepted the proposal in principle, that is, I told him: 'I am not going to argue with you about the property tax because I have personally acquired the property and according to the law, the tax follows the property to the new corporation. And as to the premiums for workmen's compensation and the charges for income tax,' I told him: 'I am ready to come to terms with you, to pay to you the premiums although I think this is unjust because this is a debt that the Treasury owes to the new corporation and not to the other, but I am going to accept that and you will acknowledge that we have the right to recover this amount of the new corporation which you have withheld, in my opinion, unjustly, as income tax of the old corporation.'

"'*      *      *      *      *      *      *

"Then the Treasurer called Mr. Juliá who had the checks; and when Mr. Juliá heard the proposal made to the Treasurer by Mr. Zeno, Mr. Juliá said: 'Mr. Zeno will have to protest the checks or write out the protest' and that the Treasurer then said: 'That is not necessary because I will decide that.' Mr. Juliá then delivered the checks to Mr. Zeno in his own hands and Mr. Zeno then signed them."

Mr. José A. Fremaint, sole witness for the defendant, testified on that same point as follows:

"The witness testifies that several checks sent by the Treasurer of Puerto Rico in favor of 'La Correspondencia' reached his desk; that then the witness called Mr. Zeno on the phone and told him that he had checks there to the amount of $7,000 and that he should come to the office. That Mr. Zeno went to the witness's office; that he does not know if he had been before in the Treasurer's office or not; that he said to Mr. Zeno the following: 'Well, Mr. Zeno, "La Correspondencia" has here $7,000 and "La Correspondencia de Puerto Rico" owes to The People of Puerto Rico so much for workmen's compensation and income tax'; that then Mr. Zeno said: 'Well, I am going to pay that because I need that money,' and he then complained that that was a tax which he should not pay because he thought he was not bound to pay; that the witness said to Mr. Zeno: 'Well, why don't you do this, why don't you make the payment under protest, we can set it out here? and the witness

(sic) said: 'No, I don't want to pay under protest because I am a good friend of the Treasurer and we can settle that.' That then Mr. Zeno endorsed the checks for taxes and took the rest. That they were checks issued by the Government of Puerto Rico in favor of 'La Correspondencia de Puerto Rico.' ''

The district court decided the conflict of the evidence in favor of the defendant, as may be seen from the following paragraphs of its opinion:

"It does not appear in any averment of the complaints that the payment was made under protest. It does not appear either from the evidence admitted, except that part of Mr. Zeno's testimony where he says that the Treasurer told him to write a letter protesting, as in fact he did; but that is not the protest contemplated by the law. The evidence shows that Mr. Zeno went to the Office of the Treasury of Puerto Rico and there, in a friendly manner, received some checks from him, endorsed them and later, in the calm of his office, he reflected that he had not made the payment under protest and he then wrote the letter of protest."

" *      *      *      *      *      *      *

"It is so clear in this case that the payment was made voluntarily, that the Treasurer of Puerto Rico himself, by letter of March 31, 1937, signed by F. Ramírez Vega, as Assistant Treasurer, flatly denies that the payments were made under protest."

In our opinion, the lower court did not err in weighing the evidence as to this point, nor is there any averment, or even less any evidence that in so weighing it, it acted moved by bias, prejudice or partiality.

We agree with the lower court that the evidence does not show that the payment had been made under protest. For this, it would have been necessary that at the moment of endorsing and returning the checks aforesaid, the plaintiff would set out his protest, or at least, as was stated by the Circuit Court in the case of *Jiménez* v. *Domenech, supra,* that it would notify the officer to whom it made payment, that it did so under protest, and would demand its return. But the plaintiff did not do so. It merely expressed to that officer

that it would argue the justice of his case with the Treasurer in due course. That is not the payment under protest to which the law refers.

The letter signed by Mr. Zeno which the trial judge mentions in his opinion and where said witness tried to express his protest, in our judgment is not sufficient, because, as the trial judge said, it was not written at the moment of payment but sometime after it had been made.

This being so, what is the use of arguing the other issues raised by the appellant, if we would always have to arrive at the inevitable conclusion that the court lacked jurisdiction to take cognizance of these cases because the first one of them was not appealed to the Board of Review and Equalization and because in both of them the payment was not made under protest, both of which requisites are fundamental for these appeals?

In consequence thereof the judgments appealed from must be affirmed.